ETHAN D. BALSAM
LITTLER MENDELSON, P.C.
1150 17th Street N.W., Suite 900
Washington, D.C.  20036
202.789.3424

ROBERT F. FRIEDMAN
(*pro hac vice* motion forthcoming)
LITTLER MENDELSON, P.C.
2001 Ross Avenue, Suite 1500
Dallas, TX  75201
214.880.8100

Attorneys for Defendants
    TRUGREEN LIMITED PARTNERSHIP
    and THE SERVICEMASTER COMPANY
    (incorrectly named as "ServiceMaster" in the Complaint)

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| RICHARD HECKERT, SEAN PLUCINIK and PAUL EVEN, on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>-against-<br><br>TRUGREEN LIMITED PARTNERSHIP, TRUGREEN LANDCARE, LLC, and SERVICEMASTER,<br><br>Defendants. | Index No. 1:13-cv-756 (RJD) (RLM)<br><br>**DEFENDANTS' MOTION TO COMPEL ARBITRATION AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES** |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II.  FACTS ...................................................................................................................... 2

    A.   The We Listen Program ..................................................................................... 2

    B.   Plaintiffs Agreed and Acknowledged Their Duty to Arbitrate ............................. 3

III. LEGAL ARGUMENT ................................................................................................. 4

    A.   The FAA Mandates the Enforcement of the Parties' Arbitration
        Agreement ........................................................................................................ 4

        1.   Plaintiffs Entered into Valid Arbitration Agreements ............................... 6

        2.   Plaintiffs' Claims Fall Within the Substantive Scope of the
            Program ................................................................................................. 8

        3.   The Wage and Hour Claims Asserted By Plaintiffs Are Arbitrable ........ 14

    B.   Plaintiffs Must Proceed in Arbitration on an Individual Basis ........................... 15

IV.  CONCLUSION AND REQUEST FOR RELIEF ........................................................ 19

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Adkins v. Labor Ready, Inc.,*
  303 F.3d 496 (4th Cir. 2002) ...................................................................................15, 18

*Allendale Mut. Ins. Co. v. Excess Ins. Co., Ltd.,*
  992 F.Supp. 271 (S.D.N.Y. 1997) ...................................................................................12

*AT&T Mobility LLC v. Concepcion*
  (*"Concepcion"*), 131 S. Ct. 1740 (2011) ..................................................................passim

*Beletsis v. Credit Suisse First Boston Corp.,*
  2002 U.S. Dist. LEXIS 16586 (S.D.N.Y. Aug. 28, 2002)..............................................8, 12, 13

*Carter v. Countrywide Credit Indus., Inc.,*
  362 F.3d 294 (5th Cir. 2004) ...................................................................................18

*Cent. W. Va. Energy, Inc. v. Bayer Cropscience LP,*
  645 F.3d 267 (4th Cir. 2011) ...................................................................................15

*Chen-Oster v. Goldman, Sachs & Co.,*
  785 F. Supp. 2d 394 (S.D.N.Y. 2011), *rev'd on other grounds sub. nom. Parisi v.*
  *Goldman, Sachs & Co.*, 710 F. 3d 483, 2013 U.S. App. LEXIS 5681 (2d. Cir. 2013)...........16

*Circuit City Stores, Inc. v. Adams,*
  532 U.S. 105 (2001)...................................................................................5

*Citizens Bank v. Alafabco, Inc.,*
  539 U.S. 52 (2003)...................................................................................5

*Collins & Aikman Prods. Co. v. Building Sys.,*
  58 F.3d 16 (2d Cir. 1995) ...................................................................................8, 9

*Dean Witter Reynolds Inc. v. Byrd,*
  470 U.S. 213 (1985)...................................................................................6, 8

*DIRECTV, LLC v. Arndt,*
  2012 U.S. Dist. LEXIS 185158 (N.D. Ga. Nov. 30, 2012) ....................................................17

*Dixon v. NBCUniversal Media, LLC,*
  No. 12-cv-07646-PAE (S.D.N.Y. May 28, 2013) at p. 14 (attached hereto as Ex. 2)...............7

## TABLE OF AUTHORITIES
### (continued)

**Page**

Dixon v. NBCUniversal Media, LLC,
    No. 2:12-cv-07646-PAE (S.D.N.Y. May 28, 2013), at p. 19 ...............................................15

Eichinger v. Kelsey-Hayes Co.,
    2010 U.S. Dist. LEXIS 68148 (E.D. Mich. July 8, 2010) .................................................13, 14

Eshagh v. The Terminix Int'l Co.,
    2012 U.S. Dist. LEXIS 66527 (E.D. Ca. May 10, 2012) ........................................................15

Fitzhugh v. Am. Income Life Ins. Co.,
    2011 U.S. Dist. LEXIS 156855 (N.D. Ohio Nov. 3, 2011) ....................................................16

Genesco, Inc. v. T. Kakiuchi & Co., Ltd.,
    815 F.2d 840 (2d Cir. 1987) ........................................................................................................6

Gilmer v. Interstate/Johnson Lane Corp.,
    500 U.S. 20 (1991)....................................................................................................................6, 8

Goodale v. George S. May Int'l Co.,
    2011 U.S. Dist. LEXIS 37111 (N.D. Ill. April 5, 2011) .........................................................16

Green Tree Fin. Corp.-Ala. v. Randolph,
    531 U.S. 79 (2000)......................................................................................................................12

Horenstein v. Mortg. Mkts., Inc.,
    9 Fed. Appx. 618 (9th Cir. 2001)..............................................................................................18

Howsam v. Dean Witter Reynolds, Inc.,
    537 U.S. 79 (2002)..................................................................................................................15, 1

Jock v. Sterling Jewelers, Inc.,
    646 F.3d 113 (2d Cir. 2011), cert. denied, 132 S. Ct. 1742 (2012)........................................17

Kinecta Alt. Fin. Solutions v. Superior Court,
    2012 Cal. App. LEXIS 487 (Cal. App. 2d Dist. Apr. 25, 2012)..............................................19

LaVoice v. UBS Fin. Servs.,
    2012 U.S. Dist. LEXIS 5277 (S.D.N.Y. Jan. 13, 2012) .........................................................18

Lu v. AT&T Servs.,
    2011 U.S. Dist. LEXIS 65617 (N.D. Cal. June 21, 2011).......................................................18

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Manigault v. Macy's East, LLC,*
   318 Fed. Appx. 6 (2d Cir. March 25, 2009) ........................................................7

*Martin v. SCI Mgmt., L.P.,*
   296 F. Supp. 2d 462 (S.D.N.Y. 2003) ......................................................8, 14, 15

*McFadden v. Clarkeson Research Grp.,*
   2012 U.S. Dist. LEXIS 50526 (E.D.N.Y. May 18, 2010) ....................................7

*Mehler v. The Terminix Int'l Co.,*
   205 F.3d 44 (2d Cir. 2000) .................................................................................8

*Mitchell v. Abercrombie & Fitch, Co.,*
   428 F. Supp. 2d 725 (S.D. Ohio 2006), *aff'd*, 225 Fed. Appx. 362 (6th Cir. 2007)...............20

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
   460 U.S. 1 (1983)........................................................................5, 11, 14

*Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.,*
   460 US 1 (1983).......................................................................................5, 8

*Motors Corp. v. Soler Chrysler-Plymouth, Inc.,*
   473 U.S. 614 (1985)..............................................................................5

*Oldroyd v. Elmira Savings Bank, FSB,*
   134 F.3d 72 (2d Cir. 1998) ..............................................................7, 8, 9

*Owen v. Bristol Care, Inc.,*
   702 F.3d 1050 (8th Cir. Jan. 7, 2013) ...............................................15

*Perry v. Thomas,*
   482 U.S. 483 (1987)................................................................5, 15

*Preston v. Ferrer,*
   532 U.S. 346 (2008).....................................................................5

*Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela,*
   991 F.2d 42 (2d Cir. 1993) .............................................................7

*Reed Elsevier, Inc. v. Crockett,*
   2012 U.S. Dist. LEXIS 23947 (S.D. Ohio February 24, 2012) .............15

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Reed v. Fla. Metro. Univ.*,
  681 F.3d 630 (5th Cir. 2012) ................................................................16

*Reynolds v. de Silva*,
  2010 U.S. Dist. LEXIS 18040 (S.D.N.Y. Feb. 24, 2010)........................19

*Rodriguez de Quijas v. Shearson/American Express, Inc.*,
  490 U.S. 477 (1989)..................................................................................6

*Ryan v. JP Morgan Chase & Co.*,
  2013 U.S. Dist. LEXIS 24628 (S.D.N.Y. Feb. 21, 2013)...................15, 19

*Safra Nat'l Bank v. Penfold Inv. Trading, Ltd.*,
  2011 U.S. Dist. LEXIS 51687 (S.D.N.Y. April 20, 2011) .......................15

*Southland Corp. v. Keating*,
  465 U.S. 1 (1984)......................................................................................5

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*
  ("*Stolt-Nielsen*"), 130 S. Ct. 1758 (2010)....................................passim

*Sutter v. Oxford Health Plans LLC*,
  675 F.3d 215 (3d Cir.), *cert. granted*, 133 S. Ct. 786 (2012) .................17

*Sylanski v. TruGreen Ltd. P'shp.*,
  2012 U.S. Dist. LEXIS 186303 (E.D. Pa. June 13, 2012)................passim

*Torres v. United Healthcare Svcs., Inc.*,
  2013 U.S. Dist. LEXIS 14200 (E.D.N.Y. Feb. 1, 2013) .........................15

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
  363 U.S. 574 (1960)......................................................................12, 13, 14

*Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*,
  489 U.S. 468 (1989)..............................................................................9, 11

*Waldbillig v. SSC Germantown Operating Co.*,
  2010 U.S. Dist. LEXIS 49451 (E.D. Wis. April 26, 2010) .....................14

*White v. Baptist Mem'l Health Care Corp.*,
  2011 U.S. Dist. LEXIS 52928 (W.D. Tenn. May 17, 2011), *aff'd*, 669 F.3d 869 (6th
  Cir. 2012)................................................................................................20

**TABLE OF AUTHORITIES**
(continued)

Page

*Winn v. Tenet Healthcare Corp.*,
  2011 U.S. Dist. LEXIS 8085 (W.D. Tenn. Jan. 27, 2011) ......................................18

*WorldCrisa Corp. v. Armstrong*,
  129 F.3d 71 (2d Cir. 1997) .............................................................................9

*Zekri v. Macy's Retail Holdings, Inc.*,
  2010 U.S. Dist. LEXIS 119453 (N.D. Ga. Nov. 4, 2010), *cert denied*, 131 S.Ct. 2972
  (2011)..........................................................................................................18

**STATUTES**

Age Discrimination in Employment Act ("ADEA") ......................................6

Fair Labor Standards Act ("FLSA")...........................................................passim

Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*...........................passim

New York Labor Law ("NYLL") .........................................................1, 15

Title VII .....................................................................................................16

**OTHER AUTHORITIES**

29 C.F.R. § 778.109.....................................................................................14

http://wordnet.princeton.edu/wordnet/frequently-asked-questions/database ................................11

http://www.worldatwork.org/waw/aboutus/html/aboutus-waw.html ...........................................11

http://www.worldatwork.org/waw/Glossary?browse=N ...............................................................11

U.S. CONST. art. VI, cl. 2.............................................................................5

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs Richard Heckert, Sean Plucinik and Paul Even (collectively "Plaintiffs") allege putative class and/or collective action claims for alleged unpaid overtime under the New York Labor Law ("NYLL") and the Fair Labor Standards Act ("FLSA").  Complaint ¶¶ 2-4.  Plaintiffs are precluded from litigating their claims in court, however, because they are parties to a dispute resolution agreement known as the *"We Listen* Program" (hereinafter "the Program") that requires each of them to arbitrate "employment related concerns," including "concerns related to ... *wage and hour* issues."  Declaration of Roy Cohen ("Cohen Decl.") ¶¶ 8-13, and Ex. A thereto at pp. 7, 13 (emphasis added) (attached hereto as Ex. 1).  Further, Defendants[1] did not agree or consent to arbitrate class or collective claims.

The United States Supreme Court strongly endorses the enforcement of arbitration agreements, as evidenced by its decisions in *AT&T Mobility LLC v. Concepcion* ("*Concepcion*"), 131 S. Ct. 1740 (2011), and *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.* ("*Stolt-Nielsen*"), 130 S. Ct. 1758, 1775 (2010).  Consistent with Supreme Court precedent, Plaintiffs must arbitrate their disputes because Defendants can establish the existence of valid arbitration agreements that cover the parties' disputes.  *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002).

Moreover, the Program requires arbitration of Plaintiffs' claims in an individual capacity – not on a class or collective basis – because there is no agreement for class or collective arbitration.  Therefore, Plaintiffs are precluded from proceeding with a class or collective action and must arbitrate their claims (if they should so choose) on an individual basis only.

Accordingly, Defendants request that this Court dismiss this case with prejudice, or alternatively stay this case pending arbitration.  *See* 9 U.S.C. § 3.  In addition, Defendants

---

[1]  This Motion is brought on behalf of all Defendants, except TruGreen LandCare, LLC, because that entity is not a proper defendant in this matter.  On June 5, 2013, defendant TruGreen LandCare, LLC was dismissed from this action without prejudice. *See* Docket Entry No. 53.

request that this Court dismiss the collective and/or class action claims and order that any such arbitration proceed on an individual, as opposed to class or collective basis.

## II.    FACTS

### A.    The *We Listen* Program

Defendants utilize an alternative dispute resolution program known as "*We Listen.*" *See* Cohen Decl. ¶ 6. The *We Listen* Program is a comprehensive dispute resolution process whereby employees (or "associates"), as a term and condition of their employment, agree to use the Program to address any employment-related concerns. *Id.* and Exs. A and B thereto. The Program is the exclusive remedy for the resolution of disputes, and provides for final and binding arbitration. The Program explicitly covers "wage and hour issues." *Id.* Ex. A, at p. 7.

The Program is a multi-step procedure for resolving employment disputes. *See id.*, pp. 8-12. If the dispute cannot be resolved in the initial steps (internal review), the associate may choose to mediate. *Id.*, pp. 8-11. Defendants cover the fees and costs of the mediation, except for a $50 filing fee[2] and any attorneys' fees the associate may choose to incur. If the issue is not resolved at mediation, the associate may proceed to arbitration. *Id.*, pp. 11-12. Under the Program, Defendants pay the entire cost of the arbitration. *See id.*, pp. 12, 14. While the associate is expected to pay his or her attorneys' fees, the arbitrator can award any remedy, including attorneys' fees, that could be awarded in a court of law. *See id.*

Associates of TruGreen Limited Partnership ("TruGreen")[3] are notified and consent to the Program in a number of communications and publications. They are provided with the Program Brochure (Ex A to Cohen Decl.), which is a 15-page booklet that includes a description of the Program, procedures, what type of issues are covered, and a Q&A Section. Cohen Decl.

---

[2]  Despite having no obligation to do so under the Program, Defendants customarily cover this $50 filing fee.
[3]  Plaintiffs were all employed by TruGreen. Cohen Decl. ¶ 5.

¶¶ 7-8. The Brochure is made available as a handout from management, Human Resources, and on-line at the Company's intra-net site, along with other policies and procedures and company communications. *Id.* ¶ 7. The Associate Handbook also includes a notice about the Program, and the Handbook Acknowledgement specifically notes the Program. *Id.* and Ex. F thereto. Further, TruGreen's Compensation Plans and bonus plans all condition participation in the pay and incentives upon consent to abide by the Program. *Id.*

**B.     Plaintiffs Agreed and Acknowledged Their Duty to Arbitrate**

On multiple occasions throughout their employment, Plaintiffs not only had notice but explicitly agreed to the terms of the Program. Specifically, Plaintiff Heckert signed a We Listen Acknowledgement Form on March 22, 2010, in which he acknowledged that he had "been given the We Listen booklet" (the Brochure) and that "as a term and condition of my employment ..., I will use the program to address ***any employment-related concerns and complaints***." *Id.* ¶ 10 and Ex. E thereto (emphasis added).

Heckert also agreed to Compensation Plans on March 23, 2009 and March 2, 2010, which stated as follows:

> Participation in this compensation Plan is ***contingent*** on your agreement to utilize ServiceMaster's alternative dispute resolution program "We Listen" to resolve ***any and all work related disputes/concerns*** and to mediate/arbitrate such disputes if they are not resolved. Full details regarding the "We Listen" program are available from your manager or HR representative and available online at http://www.eyeonservicemaster.com/news/We-Listen.[4]

*Id.* ¶ 9 and Exs. C-D thereto (emphasis added). Moreover, the acknowledgement above Heckert's signature on the 2010 Compensation Plan states as follows:

> **I have read this Compensation Plan, have discussed it with my supervisor, and have been given the opportunity to ask questions about the Plan. I agree**

---

[4] This provision in the 2009 Compensation Plan directed Heckert to a former internet site utilized by the Company to communicate all policies, procedures, benefits and other important communications; otherwise, the language was identical to the above. *See id.* ¶ 7 and Ex. C thereto.

> **to abide by the policies and procedures and guidelines set forth herein, including agreement to utilize the "We Listen" program to resolve employment related disputes....**

*Id.* Ex. D (emphasis original).  On March 23, 2010, Heckert again confirmed his agreement to utilize the Program by executing a Handbook Acknowledgement, in which he agreed to use the Program "to resolve any and all work-related disputes/concerns and to arbitrate such disputes if they are not resolved." *Id.* ¶ 10, and Ex. E thereto.

Plaintiff Even also signed Compensation Plans containing language identical to the language quoted above on May 26, 2009 and January 18, 2010.  *Id.* ¶ 12, and Exs. L and M thereto.  In addition, Even received the Associate Handbook and signed a Handbook Acknowledgement on February 26, 2010, in which he agreed to use the Program "to resolve any and all work-related disputes/concerns and to arbitrate such disputes if they are not resolved." *Id.* ¶ 13, and Ex. N thereto.

Finally, Plaintiff Plucinik signed a number of different Compensation Plans in 2009 and 2010, all of which contained the language quoted above.  *Id.* ¶ 11 and Exs. G-K thereto.  As such, there can be no question that Plaintiffs all received notice of and agreed to utilize the Program to resolve their employment related disputes.

## III.  LEGAL ARGUMENT

### A.    The FAA Mandates the Enforcement of the Parties' Arbitration Agreement

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq*., was passed to reverse longstanding judicial hostility toward arbitration agreements and to place them on the same footing as other contracts. *Concepcion*, 131 S. Ct. at 1745.  The FAA applies to agreements "involving" commerce. 9 U.S.C. § 2. The Supreme Court has "interpreted the term 'involving commerce' in the FAA as the functional equivalent of the more familiar term 'affecting commerce' – words of art that ordinarily signal the broadest permissible exercise of Congress'

Commerce Clause power." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003). Under the Supremacy Clause, U.S. CONST. art. VI, cl. 2, the FAA preempts all otherwise applicable or conflicting state laws. *Preston v. Ferrer*, 532 U.S. 346, 356-57 (2008); *see Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984) ("In enacting Section 2 of the [FAA], Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agree to resolve by arbitration.").

The Program expressly states that it is governed by the FAA and that it involves commerce. Cohen Decl. Ex. B, pp. 2, 5. Supporting this conclusion, TruGreen operates facilities throughout the United States, purchases its inventory and equipment from manufacturers, suppliers, and/or distributors, and such inventory and equipment is transported across state lines for delivery to TruGreen's facilities. *Id.* ¶ 4. Accordingly, there can be no legitimate question that the Program is governed by the FAA.

The FAA reflects a "liberal federal policy favoring arbitration" and requires that courts vigorously enforce agreements to arbitrate. *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 US 1, 24 (1983); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). This "liberal federal policy favoring arbitration agreements" creates "a body of federal substantive law of arbitrability, applicable to any arbitration agreement within coverage of the [FAA]." *Perry v. Thomas*, 482 U.S. 483, 489 (1987). Accordingly, it is the intent of Congress "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 22.

In keeping with this "liberal federal policy favoring arbitration," the Supreme Court has consistently endorsed arbitration as an effective means of dispute resolution in employment cases. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001) (enforcing arbitration

agreement signed during employee's application process with respect to claims brought under California's anti-discrimination statute); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991) (in ADEA case, enforcing agreement to arbitrate controversies arising out of employment that was contained in securities representative registration application); *accord Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477 (1989) (enforcing arbitration agreement in securities case, despite alleged unequal bargaining power of parties).

As the Court of Appeals for the Second Circuit has observed:  The provisions of the FAA "are mandatory:  'by its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'"  *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 844 (2d Cir. 1987) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original)).

The Second Circuit has enunciated a four-part test with regard to compelling arbitration of federal statutory claims, only three of which are applicable in this case.[5]  *Id.* at 844.  First, the court must find that the parties agreed to arbitrate their dispute.  *Id.*  Second, it must determine that the asserted claims fall within the scope of the arbitration agreement.  *Id.*  Third, if federal statutory claims are at issue, the court must assess whether Congress intended those claims to be non-arbitrable.  *Id.*  As discussed below, this test is satisfied in this case.

### 1.    Plaintiffs Entered into Valid Arbitration Agreements

As set forth above, each Plaintiff – on several separate occasions – entered into a written agreement with Defendants to arbitrate the claims at issue in this case.  Each Plaintiff signed agreements stating that he would "use the program to address any employment-related concerns

---

[5]  The fourth requires the court to decide whether to stay the balance of the proceedings pending arbitration if only some of the claims are subject to arbitration.  *Genesco*, 815 F.2d at 844.  As all claims in this case are arbitrable, the fourth factor does not apply.

and complaints," and that "employment-related dispute[s]" would "be submitted to binding arbitration." *See* Cohen Decl. Exs. C-N. "Under New York law, in the absence of fraud or other wrongful conduct, a party who signs a written contract is conclusively presumed to know its contents and to assent to them, and he is therefore bound by its terms and conditions." *Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*, 991 F.2d 42, 46 (2d Cir. 1993). *See also*, *McFadden v. Clarkeson Research Grp.*, 2012 U.S. Dist. LEXIS 50526, **12-13 (E.D.N.Y. May 18, 2010) (employee's signature on Uniform Application for Securities Industry Registration or Transfer was "sufficient to show assent to all of the essential terms of that agreement, including the agreement to arbitrate," despite fact that employee never took licensing exam or intended to become registered securities broker).   Further, Plaintiffs demonstrated acceptance by continuing to work for TruGreen after receiving a copy of the Program. *See Manigault v. Macy's East, LLC*, 318 Fed. Appx. 6, 8 (2d Cir. March 25, 2009); *see also* Cohen Decl. Ex. A, p. 7 (stating that employee "who accepts or continues employment at ServiceMaster (by accepting compensation or employment) agrees to resolve all employment related legal claims against ServiceMaster or any other ServiceMaster entity ... through this process rather than through other avenues"); *see also Dixon v. NBCUniversal Media, LLC*, No. 12-cv-07646-PAE (S.D.N.Y. May 28, 2013) at p. 14 (holding that plaintiff's continued employment after receiving notice of arbitration agreement "constituted acceptance of the binding arbitration agreement") (attached hereto as Ex. 2).

Accordingly, the first part of the Second Circuit test is easily satisfied because, in executing each of the above documents, Plaintiffs voluntarily agreed to arbitrate all disputes including the claims in their Complaint. *See Oldroyd v. Elmira Savings Bank, FSB*, 134 F.3d 72, 74-76 (2d Cir. 1998) (arbitration clause contained in employee agreement constitutes valid

agreement to arbitrate); *Martin v. SCI Mgmt., L.P.*, 296 F. Supp. 2d 462, 466-67 (S.D.N.Y. 2003) (same); *Beletsis v. Credit Suisse First Boston Corp.*, 2002 U.S. Dist. LEXIS 16586, *8-9 (S.D.N.Y. Aug. 28, 2002) ("Courts in this district routinely uphold arbitration agreements contained in employee handbooks....") (internal citations omitted).

### 2.    Plaintiffs' Claims Fall Within the Substantive Scope of the Program

Prevailing federal precedent directs courts to "'construe arbitration clauses as broadly as possible.'" *Oldroyd*, 134 F.3d at 76 (quoting *Collins & Aikman Prods. Co. v. Building Sys.*, 58 F.3d 16, 19 (2d Cir. 1995)). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 US 1, 24-25 (1983). *See Oldroyd*, 134 F.3d at 76. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). Accordingly, this Court must resolve any doubts regarding the scope and enforceability of the Program in favor of arbitration. And, significantly, the party resisting arbitration bears the burden of proving a legislative intent to preclude arbitration of the claims asserted. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991).

The Program expressly covers "any employment-related concerns and complaints," specifically including "wage and hour issues." Cohen Decl. Ex. A, p. 1. The Second Circuit has held that language nearly identical to this was "precisely the kind of broad arbitration clause that justifies a presumption of arbitrability." *Oldroyd*, 134 F.3d at 76 (clause requiring arbitration of "any dispute, controversy or claim arising under or in connection with" employment agreement creates presumption of arbitrability of employment-related claims). *See also Mehler v. The Terminix Int'l Co.*, 205 F.3d 44, 49-50 (2d Cir. 2000) (clause providing for arbitration of "any

controversy or claim … arising out of or relating to" agreement is "a classically broad one");
*Collins & Aikman*, 58 F.3d at 20 (clause requiring arbitration of "[a]ny claim or controversy
arising out of or relating to this agreement" is "the paradigm of a broad clause"). When the
arbitration agreement is broadly drafted, a presumption of arbitrability arises, "'which is only
overcome if it may be said *with positive assurance that the arbitration clause is not susceptible
of an interpretation that [it] covers the asserted dispute*.'" *Oldroyd*, 134 F.3d at 76 (quoting
*WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997) (emphasis original in *Oldroyd*).
Thus, the claims raised in the Complaint are encompassed by the Program.

It is anticipated that Plaintiffs may argue that the Program does not cover the claims in
this case based on an unpublished Eastern District of Pennsylvania opinion. *See Sylanski v.
TruGreen Ltd. P'shp.*, 2012 U.S. Dist. LEXIS 186303 (E.D. Pa. June 13, 2012). In *Sylanski*, the
court held that a provision in the *We Listen* Plan and Rules document (a separate document from
the *We Listen* Brochure given to associates) created an ambiguity as to whether claims involving
"pay rates" were arbitrable. In doing so, the *Sylanski* court ignored the Supreme Court's clear
mandate that in determining whether a dispute falls within the scope of the arbitration agreement,
"ambiguities ... [are] resolved in favor of arbitration." *Volt Info. Sciences, Inc. v. Bd. of Trustees
of Leland Stanford Junior Univ.*, 489 U.S. 468, 476 (1989).

The Brochure describing the Program sets out in very broad terms the claims covered:

> The *We Listen* program protects your legal rights, such as prohibitions against
> discrimination and harassment, *as well as other rights protected by federal or
> state law*.

Cohen Decl. Ex. A, p. 5 (emphasis added). The *We Listen* Brochure goes on to list two very
broad categories of issues covered: a) those related to discrimination or harassment, and
b) "concerns related to retaliation, wrongful discharge, safety, *and wage and hour issues*." *See*

*id.*, p. 7 (emphasis added).[6]  There can be no plainer explanation of the coverage of the Program and that it directly covers any of the variety of issues regulated by the United States Department of Labor's "Wage and Hour Division" – the agency charged with oversight and law enforcement of the entire "wage and hour" field.  Plaintiffs' claims undoubtedly are "wage and hour issues."

Moreover, the separate *We Listen* "Plan and Rules" document also defines the "Disputes" covered by the Program very broadly as:

> **all** legal and equitable claims, demands, and controversies, *of whatever nature or kind*, whether in contract, tort, *under statute or regulation, or some other law*, between persons bound by the Program . . . including, but not limited to, any matter with respect to . . . the employment or potential reemployment of an Associate, *including the terms, conditions, or termination of such employment with the Company*.

Cohen Decl. Ex. B, p. 2 (emphasis added).  Read together, the *We Listen* Brochure and the Plan and Rules document[7] clearly state that Plaintiffs' wage and hour claims are covered.

Following the very broad description making clear that the Program covers any statutory claim, the Plan and Rules document goes on, at p. 3, to list several issues that do not fall within the term "Dispute," including "changes to Company policies, performance evaluations, job descriptions, job classifications (grades), pay rates ... unless such concern involves or relates to an allegation of unlawful harassment or discrimination."  It was this "carve-out" language indicating that disputes over "pay rates" are not covered that the court in *Sylanski* seized upon to determine that the plaintiffs' wage and hour claims were not covered by the Program.  2012 U.S. Dist. LEXIS 186303 at *9.  However, the reasoning of the *Sylanski* court is faulty and contrary to Supreme Court authority.

---

[6] Following this very broad description, the *We Listen* Brochure does note a carve-out for certain claims "unless they contain a discrimination component."  These claims include "work assignments, hours of work, or salary grades, benefit policies or application of benefit plans, or the content of ServiceMaster policies," none of which are at issue in this case.  *See* Cohen Decl. Ex. A, p. 7.

[7] *See* Cohen Decl. ¶ 8 (noting that the Plan and Rules document and the Brochure together contain the terms of the arbitration agreement).

The term "pay rate" is not defined in the Program documents.  However, the term is commonly used among compensation professionals to denote an employee's wage or salary level.[8]  Moreover, Princeton University's WordNet, a web-based compilation of words commonly used in the English lexicon,[9] defines "pay rate" as "rate of pay (amount of money received per unit time)."  Given that the *We Listen* booklet specifically states that it covers "wage and hour issues," the undefined term "pay rate" must be read to mean that the Program does not cover an employee's dissatisfaction with his or her rate of pay that does not implicate any wage and hour laws – for instance, the employee who simply thinks she should be paid $20 per hour instead of $19.  Any other reading would render the specific statement that the Program covers "wage and hour issues" meaningless, as every wage and hour claim could be considered a dispute over "pay rates."

At worst, the undefined term "pay rate" could be said to create an ambiguity in the Program documents.  However, Supreme Court decisions teach that all "ambiguities … [are] resolved in favor of arbitration" (*Volt Info. Sciences*, 489 U.S. at 475), contrary to the usual rule of contract construction that ambiguities are resolved against the drafter.  The Supreme Court has clearly mandated that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25 (1983).  Indeed, a court must defer to arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."

---

[8]   *See* http://www.worldatwork.org/waw/Glossary?browse=N&country=USA&searchStr=pay+rate        (defining "individual pay rate" as "The wage or salary level assigned to a given individual."  World at Work, which was formerly called the "American Compensation Association," is a professional association that certifies compensation professionals. *See* http://www.worldatwork.org/waw/aboutus/html/aboutus-waw.html.
[9]   *See* http://wordnet.princeton.edu/wordnet/frequently-asked-questions/database.

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960).[10]

While paying lip service to the presumption of arbitrability required by federal law, the *Sylanski* court proceeded to ignore that presumption and found, based on the carve-out for the undefined term "pay rate," that the Program excluded from coverage the broad range of FLSA and state law wage and hour claims.  Notably, the *Sylanski* court reached the *opposite* conclusion with respect to the plaintiffs' argument that the carve-out for disputes related to "*salary grades*" in the *We Listen* Brochure (Cohen Decl. Ex. A, p. 7) disqualified their claims for arbitration.  In rejecting that argument, the court held:

> The exact applicability of the term "salary grade" to the case at hand *is ambiguous because neither the We Listen Brochure nor the We Listen Plan and Rules provide any evidence regarding the definition of the term.*  The ambiguity is particularly apparent in light of the sentence in the brochure which reads, "We Listen also addresses concerns related to retaliation, wrongful discharge, safety, and *wage and hour issues.*"

*Sylanski*, 2012 U.S. Dist. LEXIS 186303, *9 (emphasis added).  Thus, the court "honor[ed] the so-called presumption of arbitrability" and refused to hold that the claims were outside the scope of the Program based on the carve-out for disputes related to "salary grades."  *Id.* at *10.  However, the court then inexplicably failed to apply this same reasoning to the carve-out for "pay rates."

Not only did the *Sylanski* opinion ignore Supreme Court precedent, the opinion is contrary to New York contract law.  In interpreting a contract under New York law, a court "should read the contract as a whole and consider all its clauses together."  *Beletsis v. Credit Suisse First Boston Corp.*, 2002 U.S. Dist. LEXIS 16586, **13-14 (S.D.N.Y. Aug. 28, 2002) (citing *Allendale Mut. Ins. Co. v. Excess Ins. Co., Ltd.*, 992 F. Supp. 271, 274 (S.D.N.Y. 1997)).

---

[10] "*A party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration.*" *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000) (internal citations omitted) (emphasis added).

Moreover, "a contract containing two clauses which conflict should, if possible, be read to give meaning to both rather than accept one to the exclusion of the other." *Id.* at *14.

The *Sylanski* court's reading of the Program essentially renders the express provision stating that "wage and hour issues" are covered, as well as the provision stating that the Program covers "*all* legal and equitable claims ... *under statute*" meaningless. In light of these express provisions, the phrase "pay rates" can only be read to exclude from arbitrability an employee's dissatisfaction with his or her rate of pay that does not implicate any wage and hour laws.

Finally, the *Sylanski* court ignored the specific claims brought by the plaintiffs therein – claims (like Plaintiffs' claims in this case) that the defendants had violated *wage and hour* laws. The fact that the Plan and Rules document prohibits associates from subjecting TruGreen to arbitration over ordinary complaints that an associate's "pay rate" is too low, cannot reasonably be interpreted to preclude arbitration of statutory "wage and hour" claims, which the *We Listen* Brochure specifically confirms are covered by the Program. Cohen Decl. Ex. A., pp. 1, 7.

Other federal courts addressing similar arguments have acknowledged the Supreme Court's mandate that all "doubts should be resolved in favor of coverage"[11] and held that wage and hour claims were arbitrable, despite "carve out" language in the agreements for disputes regarding "wage rates" or other types of compensation and benefit issues. For example, in *Eichinger v. Kelsey-Hayes Co.*, 2010 U.S. Dist. LEXIS 68148 (E.D. Mich. July 8, 2010), the court rejected the plaintiff's argument that her FLSA claims were not arbitrable because the arbitration agreement said it was "not intended to cover disputes over ... Company *wage rates or salary structures.*" *Id.* at *8 (emphasis added). In reaching its conclusion, the court stated:

> [the plaintiff's] *claim for overtime pay does not constitute a dispute over her wage rate or salary structure.* Eichinger is not challenging the rate at which

---

[11] *United Steelworkers of Am.*, 363 U.S. at 582-83.

Kelsey-Hayes pays for overtime work,[12] nor does she allege that she should have
been paid a higher base wage, or placed in a higher salary grade.

*Id.* (emphasis added).  Similarly, in *Waldbillig v. SSC Germantown Operating Co.*, 2010 U.S.

Dist. LEXIS 49451, *16 (E.D. Wis. April 26, 2010), the court held  that overtime claims were

arbitrable, despite language in the arbitration agreement excluding claims for employment

benefits, unemployment compensation and workers' compensation.   The court reached this

conclusion despite the fact that the arbitration agreement at issue stated that it was used "for

resolving *most* workplace disputes," and did not even specifically mention "wage and hour"

disputes in the list of examples of covered claims. *See id.* (emphasis in original).

In summary, there can be no doubt that FLSA and state law wage and hour claims fall

within the scope of the *We Listen* Program.  However, even if doubt existed, ***any doubts must be***

***resolved in favor of arbitrability***. *See Moses H. Cone Mem'l Hosp.*, 460 U.S. at 22.  There is

ample evidence in the Program, including an express provision stating that "wage and hour

issues" are covered, to support Defendants' argument that Plaintiffs' claims must be arbitrated

under the Program.  Thus, rather than follow *Sylanski*, this Court should follow the Supreme

Court's mandate that "unless it may be said with positive assurance that the arbitration clause is

not susceptible of an interpretation that covers the asserted dispute ... doubts should be resolved

in favor of coverage." *United Steelworkers of Am.*, 363 U.S. at 582-83.

### 3.      The Wage and Hour Claims Asserted By Plaintiffs Are Arbitrable

There is no question that an employer and employee can agree to arbitrate statutory

claims, including claims arising under the FLSA and equivalent state laws.  In addressing this

prong of the Second Circuit's test, the court in *Martin v. SCI Mgmt. L.P.*, specifically, held that

---

[12]  Similarly, in this case, Plaintiffs are not challenging the rate at which they were paid overtime; rather, they are
challenging the *method* utilized by Defendants to calculate overtime pay.  There is no such thing as an "overtime
rate," as overtime pay for hours worked over 40 is based on the "regular rate of pay" and is not a fixed amount.  29
C.F.R. § 778.109.

there was "no indication that Congress intended [FLSA] claims to be nonarbitrable."  296 F. Supp. 2d 462, 467 (S.D.N.Y. 2003) (citing *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 506 (4th Cir. 2002)).  *See Dixon v. NBCUniversal Media, LLC,* No. 2:12-cv-07646-PAE (S.D.N.Y. May 28, 2013), at p. 19 ("This Court joins the vast majority of courts in holding that the right to proceed collectively under the FLSA can be waived in an arbitration agreement."); *Ryan v. JP Morgan Chase & Co.*, 2013 U.S. Dist. LEXIS 24628, *8 (S.D.N.Y. Feb. 21, 2013) ("Congress intended FLSA claims to be arbitrable."); *Torres v. United Healthcare Svcs., Inc.*, 2013 U.S. Dist. LEXIS 14200, *19 (E.D.N.Y. Feb. 1, 2013) (FLSA and NYLL claims arbitrable); *see also*, *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987) (California state wage claims arbitrable); *Owen v. Bristol Care, Inc.*, 702 F.3d 1050, 1054 (8th Cir. Jan. 7, 2013) (FLSA claims arbitrable).  Accordingly, Plaintiffs' claims are subject to arbitration.

## B.   Plaintiffs Must Proceed in Arbitration on an Individual Basis

Plaintiffs must pursue their claims in arbitration on an individual basis because Defendants did not agree or consent to class or collective arbitration.[13]  As the Supreme Court recently confirmed in *Stolt-Nielsen*, 130 S. Ct. at 1775, it is improper to force a party into a class proceeding to which it did not agree.  As such, "a party cannot be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed

---

[13] As the court recognized in *Safra Nat'l Bank v. Penfold Inv. Trading, Ltd.*, 2011 U.S. Dist. LEXIS 51687 (S.D.N.Y. April 20, 2011), "absent an agreement to arbitrate on a class basis, the availability of class arbitration is a gateway issue to be decided by the courts." *Id.* at *9 (citing *Stolt-Nielsen*, 130 S. Ct. at 1775). *See also Cent. W. Va. Energy, Inc. v. Bayer Cropscience LP*, 645 F.3d 267, 275 (4th Cir. 2011) ("*Stolt-Nielsen* found that the particular question of whether parties had 'agreed to authorize class arbitration' was not one of procedure" to be decided by the arbitrator.") (citing *Stolt-Nielsen*, 130 S. Ct. at 1776); *Eshagh v. The Terminix Int'l Co.*, 2012 U.S. Dist. LEXIS 66527 **29-30 (E.D. Ca. May 10, 2012) (rejecting plaintiffs' contention that question of whether plaintiff had right to bring class arbitration was question of procedural arbitrability for arbitrator, and striking class allegations); *Reed Elsevier, Inc. v. Crockett*, 2012 U.S. Dist. LEXIS 23947, *19 (S.D. Ohio February 24, 2012) (holding that question as to whether parties agreed to class arbitration was essentially "'a disagreement about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy' ..., to wit: whether the arbitration provisions in the parties' agreement apply to classwide arbitration.") (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)).

to do so." *Id.* Thus, when an arbitration agreement is silent on the issue of class arbitration, it cannot "be interpreted to allow them because the 'changes brought about by the shift from bilateral arbitration to class-action arbitration' are 'fundamental.'" *Concepcion*, 131 S. Ct. at 1750 (citing *Stolt-Nielsen*, 130 S. Ct. at 1776).

The Program is silent as to whether multiple-party or class claims are permitted in a single arbitration proceeding.  Thus, the Supreme Court's holding in *Stolt-Nielsen* prohibits Plaintiffs from pursuing class claims or joining their claims in a single arbitration proceeding involving other putative class members.  130 S. Ct. at 1776 ("the parties' mere silence on the issue of class arbitration" does not "constitute[] consent to resolve their disputes in class proceedings").  *See Chen-Oster v. Goldman, Sachs & Co.*, 785 F. Supp. 2d 394, 404 (S.D.N.Y. 2011) (holding that court was "foreclosed by the Supreme Court's recent holding in *Stolt-Nielsen*" from interpreting silent agreement to allow for class arbitration), *rev'd on other grounds sub. nom. Parisi v. Goldman, Sachs & Co.*, 710 F. 3d 483, 2013 U.S. App. LEXIS 5681 (2d. Cir. 2013);[14] *Fitzhugh v. Am. Income Life Ins. Co.*, 2011 U.S. Dist. LEXIS 156855 (N.D. Ohio Nov. 3, 2011) (relying upon *Stolt-Nielsen* and *Concepcion* to compel arbitration of individual FLSA claims and dismiss class claims when arbitration agreement was silent as to class or collective arbitration); *Goodale v. George S. May Int'l Co.*, 2011 U.S. Dist. LEXIS 37111, *2 (N.D. Ill. April 5, 2011) (in case involving arbitration agreement containing no express class action waiver, holding that *Stolt-Nielson* **"squarely forecloses the possibility that the class claims are arbitrable"** and ordering arbitration of individual claims only) (emphasis added); *see also Reed v. Fla. Metro. Univ.*, 681 F.3d 630, 642 (5th Cir. 2012) (finding no contractual basis to conclude

---

[14]   The Second Circuit reversed the portion of the *Chen-Oster* decision holding that the right to bring a pattern-or-practice claim under Title VII was a substantive statutory right that could not be waived. *Parisi*, 2013 U.S. App. LEXIS 5681 at **4-5.

that parties agreed to authorize class arbitration when agreement is silent).[15]

It is anticipated that Plaintiffs will argue that the Program contains an implicit agreement to arbitrate as a class or collectively. However, *Stolt-Nielsen* made very clear that "[a]n implicit agreement to authorize class-action arbitration ... is not a term that the [court] may infer solely from the fact of the parties' agreement to arbitrate." 130 S. Ct. at 1775. As the Court went on to explain, this is so "because class-action arbitration changes the nature of the arbitration to such a degree that it cannot be presumed the parties consented to it by simply agreeing to submit their disputes to an arbitrator." *Id.* As such, Plaintiffs cannot show that the parties intended to arbitrate on a class or collective action basis merely because the Program requires arbitration of FLSA or equivalent state law claims. *See DIRECTV, LLC v. Arndt*, 2012 U.S. Dist. LEXIS 185158 (N.D. Ga. Nov. 30, 2012) ("the mere fact that the parties agree to arbitrate a claim that could be pursued through either class or collective action in court cannot be indicia of" implicit agreement to arbitrate).

As *Stolt-Nielsen* made clear, an agreement to allow class arbitration may not be lightly inferred. 130 S. Ct. at 1776. There is no indication in the Program that the parties intended—either explicitly or implicitly—to allow class or collective arbitration. To the contrary, there is ample evidence that the parties contemplated ***individual arbitration*** and ***not*** class arbitration. The Program's express purpose is "to provide an exclusive, easy-to-use five-step program for the

---

[15]   Defendants anticipate that Plaintiffs may cite *Sutter v. Oxford Health Plans LLC*, 675 F.3d 215 (3d Cir.), *cert. granted*, 133 S. Ct. 786 (2012), and *Jock v. Sterling Jewelers, Inc.*, 646 F.3d 113 (2d Cir. 2011), *cert. denied*, 132 S. Ct. 1742 (2012), as holding to the contrary. However, both *Sutter* and *Jock* are distinguishable on a critical point. In both cases, the court was reviewing an arbitration award; as such, the courts viewed their role as being extremely limited, given the FAA's deferential standard of review. *See Jock*, 646 F.3d at 121-22; *Sutter*, 675 F.3d at 219. The *Jock* court expressly stated that its review was limited solely to whether the arbitrator "had the authority to make the decision," and "not whether the arbitrator was right or wrong in her analysis." 646 F.3d at 127; *see Sutter*, 675 F.3d at 224-25 (finding that "the arbitrator endeavored to interpret the parties' agreement within the bounds of the law, and we cannot say that his interpretation was totally irrational. Nothing more is required under § 10(a)(4) of the Federal Arbitration Act"). Thus, neither of those cases reached a decision as to whether the agreements involved, in fact, provided a contractual basis for concluding that the parties had agreed to arbitrate on a class basis. Rather, they merely concluded, under the deferential standard required by the FAA for review of arbitration awards, that the arbitrators in those cases did not exceed their broad authority to determine the issue of class arbitration.

*economical and prompt* resolution of Disputes." Cohen Decl. Ex. B, p. 2 (emphasis added). As the Court noted in *Concepcion*, "the switch from bilateral to class arbitration sacrifices the principal advantage of arbitration—its informality—and makes the process slower, more costly, and more likely to generate procedural morass than final judgment."[16] 131 S. Ct. at 1751. As such, the express intent of the Program is inconsistent with class-wide arbitration.

In addition, the Program expressly states that its proceedings are to be kept confidential. *See* Cohen Decl. Ex. B, ¶5. This provision is also at odds with class-wide arbitration. *See Stolt-Nielson,* 130 S. Ct. at 1776. Further, in defining "Disputes," the Program lists, by way of example, only substantive claims and does not mention procedural devices such as class or collective actions.[17] *See* Cohen Decl. Ex. B, p. 2. Moreover, nowhere in the Program does it state that claims can be brought on behalf of another associate.

The five-step process of the Program also clearly contemplates individual, rather than class-wide arbitration. Each step is a condition precedent to the next. Under Step One, an individual associate expresses his or her concern "directly to *his* or *her* manager or Human Resources Manager." *Id.,* p. 7 (emphasis added). This step contemplates initiation of the process

---

[16] *Concepcion* also discussed the fact that class arbitration requires procedural formality, and the Court stated that it was unlikely Congress meant to leave the disposition of those procedural requirements to an arbitrator. 131 S. Ct. at 1751-52. The Court also opined that arbitration was poorly suited to the higher stakes of class litigation and greatly increased the risks to defendants, particularly given the absence of multilayered judicial review. *Id.* at 1752.

[17] Federal court decisions have made clear that the FLSA's collective action provision is not a substantive right, but a procedural device that can be waived. *See* cases cited *supra* at pp. 14-14; *see also Carter v. Countrywide Credit Indus., Inc.,* 362 F.3d 294, 298 (5th Cir. 2004) (rejecting argument that inability to proceed collectively deprived plaintiffs of substantive rights under FLSA); *Adkins v. Labor Ready, Inc.,* 303 F.3d 496, 503 (4th Cir. 2002) (noting that FLSA collective action was not a "non-waivable right"); *Horenstein v. Mortg. Mkts., Inc.,* 9 Fed. Appx. 618, 619 (9th Cir. 2001) ("Although plaintiffs who signed arbitration agreements [containing class waivers] lack the *procedural* right to proceed as a class, they nevertheless retain all *substantive* rights under [the FLSA]") (emphasis added); *LaVoice v. UBS Fin. Servs.,* 2012 U.S. Dist. LEXIS 5277, *20 (S.D.N.Y. Jan. 13, 2012) (rejecting argument that FLSA guarantees right to bring collective action); *Lu v. AT&T Servs.,* 2011 U.S. Dist. LEXIS 65617, **8-9 (N.D. Cal. June 21, 2011) (holding that "right to bring a collective action under the FLSA is a procedural—not a substantive one"); *Winn v. Tenet Healthcare Corp.,* 2011 U.S. Dist. LEXIS 8085, *30 (W.D. Tenn. Jan. 27, 2011) ("the 'mere fact that class actions are mentioned within § 216(b) does not create a "right" for a plaintiff to bring a class action'"); *Zekri v. Macy's Retail Holdings, Inc.,* 2010 U.S. Dist. LEXIS 119453, *4, 8 (N.D. Ga. Nov. 4, 2010) (rejecting notion that right to bring collective action under FLSA is substantive right that cannot be waived and compelling arbitration on individual basis), *cert denied,* 131 S. Ct. 2972 (2011).

on an individual, localized basis. Moreover, the language describing the five steps refers to actions taken by a *single* employee: "*An* Associate or Applicant may move forward with Step Two"; "*The* Associate or Applicant should call the GCS Helpline"; "*An* Associate or Applicant may move forward with Step Three"; *etc. See id.*, pp. 7-9 (emphasis added).

In interpreting an agreement very similar to the Program, a California Court of Appeals relied upon *Concepcion* and *Stolt-Nielsen* to overturn the lower court's denial of the defendant's motion to dismiss class allegations. In *Kinecta Alt. Fin. Solutions v. Superior Court,* 2012 Cal. App. LEXIS 487 (Cal. App. 2d Dist. Apr. 25, 2012), the court concluded that the lower court's order compelling arbitration but denying the motion to dismiss class allegations "imposed class arbitration even though the arbitration provision was limited to the arbitration of disputes between [the plaintiff and defendant]." *Id.* As such, the court reversed the order of the trial court denying the defendant's request to dismiss class claims from the complaint.

In summary, the Program contains no "implicit" agreement to arbitrate on a collective or class action basis, and, in fact, strongly indicates an intent to arbitrate individual claims only. *Concepcion* and *Stolt-Nielsen,* taken together, stand squarely for the proposition that parties *cannot* be forced to arbitrate class actions unless the parties agree to class action arbitration. Given these principles, the Court should compel arbitration on an individual basis only. *See* 9 U.S.C. § 4 (courts must compel arbitration "in accordance with the terms of the agreement" upon the motion of either party to the agreement).

## IV.   CONCLUSION AND REQUEST FOR RELIEF

Plaintiffs entered into binding agreements with TruGreen to arbitrate employment-related claims, and their claims fall within the scope of the Program. As such, it is appropriate to dismiss Plaintiffs' claims with prejudice. *See Ryan v. JP Morgan Chase & Co.*, 2013 U.S. Dist. LEXIS 24628, * 6 (S.D.N.Y. Feb. 21, 2013); *see also, Reynolds v. de Silva*, 2010 U.S. Dist.

LEXIS 18040 (S.D.N.Y. Feb. 24, 2010) ("[a]ll courts of which we are aware have followed the rule that, where all of the issues raised in the Complaint must be submitted to arbitration, the Court may dismiss an action rather than stay proceedings") (internal quotation marks and citations omitted). Accordingly, Defendants request that this Court strike the class or collective claims, compel arbitration on an individual basis, and dismiss the claims of the named Plaintiffs, with prejudice to re-filing the same. Alternatively, Defendants request that this action be stayed pending completion of binding arbitration. *See* 9 U.S.C. § 3.

Plaintiffs may argue that the case should not be dismissed because Plaintiffs filed this case as a putative FLSA collective action under 29 U.S.C. § 216(b). While Plaintiffs have not yet requested that the Court conditionally certify this case as a collective action, other individuals have nonetheless purported to file consents to join this action. *See* Doc. Nos. 9-37. Because the Court has not yet authorized these individuals to join this action, Defendants at this time seek to dismiss only the claims of the named Plaintiffs based upon *their* individual arbitration agreements. Upon dismissal of the claims of the named Plaintiffs, the Court should then dismiss the claims of the purported opt-in plaintiffs, without prejudice. Such individuals (who are also subject to their own individual arbitration agreements) would then be free to pursue their individual claims in accordance with their respective arbitration agreements. *See, e.g., White v. Baptist Mem'l Health Care Corp.*, 2011 U.S. Dist. LEXIS 52928 (W.D. Tenn. May 17, 2011) (after granting summary judgment on lead plaintiff's claim, court decertified collective action and dismissed opt-ins without prejudice), *aff'd*, 669 F.3d 869 (6th Cir. 2012); *Mitchell v. Abercrombie & Fitch, Co.*, 428 F. Supp. 2d 725 (S.D. Ohio 2006) (granting defendant's motion for summary judgment on claims of named plaintiffs in putative FLSA collective action before certification), *aff'd*, 225 Fed. Appx. 362 (6th Cir. 2007).

Date:   June 7, 2013
        Washington, D.C.

_____
Ethan D. Balsam
ebalsam@littler.com
LITTLER MENDELSON, P.C.
1150 17th Street N.W., Suite 900
Washington, D.C. 20036
202.789.3424

Robert F. Friedman
(*pro hac vice* motion forthcoming)
rfriedman@littler.com
LITTLER MENDELSON, P.C.
2001 Ross Avenue, Suite 1500
Dallas, TX 75201
214.880.8100

Attorneys for Defendants
    TRUGREEN LIMITED PARTNERSHIP
    and THE SERVICEMASTER COMPANY
    (incorrectly named as "ServiceMaster" in
    the Complaint)

Firmwide:120091468.1 053274.1092